1  MATTHEW F. MILLER (Bar No. 172661) ORIGINAL
   **SCHNADER HARRISON SEGAL & LEWIS LLP**
2  One Montgomery Street, Suite 2200
   San Francisco, CA 94104-5501
3  Tel.:   415-364-6700
   Fax:   415-364-6785
4  Email: mmiller@schnader.com

5  BRUCE A. McDONALD, *pro hac vice* application pending
   **SCHNADER HARRISON SEGAL & LEWIS LLP**
6  2001 Pennsylvania Ave., N.W., Suite 300
   Washington, D.C. 20006
7  Tel.:   202-419-4235
   Fax:   202-419-3454
8  Email: bmcdonald@schnader.com

9  Attorneys for Plaintiff **CATHOLIC CHARITIES CYO**

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12  **CATHOLIC CHARITIES CYO**, a California          ) Case No: C 07 2658 MEJ
    non-profit corporation,                          )
13                                                    )
                                                      ) **PLAINTIFF'S MEMORANDUM OF**
14              Plaintiff,                            ) **POINTS AND AUTHORITIES IN**
                                                      ) **SUPPORT OF MOTION FOR**
15       vs.                                          ) **PRELIMINARY INJUNCTION**
                                                      )
16  **MARY M. GORDON**, a California resident;        )
    **ERIK "WITAKAE" OBERG**, a California            )
17  resident; **EMILY WOOD ORDWAY**, a                )
    California resident; **PAULA PARDINI**, a         )
18  California resident; **MARK SWENDSEN**, a         )
    California resident; and **CARITAS CREEK**, a     )
19  California corporation,                           )
                                                      )
20              Defendants.                           )
                                                      )
21  _____         )

22                    Submitted by:

23
              Matthew Miller (CA Bar No. 172661)
24        Bruce A. McDonald, *pro hac vice* application pending
              **SCHNADER HARRISON SEGAL & LEWIS LLP**
25
                  Attorneys for Plaintiff
26
                     May 18, 2007
27

28

## TABLE OF CONTENTS

I.     Introduction..................................................................................................................1

II.    Summary of the Issue .................................................................................................1

III.   Statement of the Facts.................................................................................................2

       A.   Background ........................................................................................................2

       B.   Events Leading to this Controversy ................................................................5

IV.    Argument ....................................................................................................................9

       A.   Standard for Preliminary Injunctive Relief......................................................9

       B.   Plaintiff is Likely to Prevail on the Merits of its Claim...................................9

            1.   The California Corporation Abandoned Any Claim of Ownership in
                 the "CARITAS CREEK" Service Mark After it Ceased Operations in
                 1985. ......................................................................................................11

            2.   Even if the California Corporation Had Intended to Retain Ownership of
                 "CARITAS CREEK" as a Service Mark After 1985, it Abandoned Such
                 Claim by Engaging in a "Naked License."..............................................14

            3.   Failing to Recognize Plaintiff's Ownership of "CARITAS CREEK" as a
                 Service Mark Would Work a Forfeiture on Plaintiff.................................15

       C.   Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive
            Relief.................................................................................................................16

       D.   Defendants' Use of Plaintiff's "CARITAS CREEK" Service Mark is Damaging to
            The Public Interest. ..........................................................................................17

V.     Conclusion ................................................................................................................17

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

Catholic Charities CYO v. Gordon et al.
Plaintiff's Memorandum in Support of Motion for Preliminary Injunction

**TABLE OF AUTHORITIES**

**Federal Cases**

*Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407 (9th Cir. 1996)............................14

*Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002)..13

*Big Country Foods, Inc. v. Board of Anchorage Alaska*, 868 F.2d 1085 (9th Cir. 1989) ...............9

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir.1988) ....................................10

*Cerveceria Centroamericana S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021 (Fed. Cir. 1989) .....13

*Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996) ............................11

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992) ....................................10

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931
(9th Cir. 2006)..........................................................................................................12, 13, 16

*First Interstate Bancorp. v. Stenquist*, 18 USPQ 2d 1159 (N.D.Cal. 1990) .................................15

*Friend v. H.A. Friend and Co.*, 416 F.2d 526 (9th Cir.) *cert. denied*, 397 U.S. 914 (1970) .........10

*Halo Management, LLC v. Interland, Inc.*, 76 USPQ2d 1199, 64 Fed. R. Evid. Serv. 1077
(N.D.Cal. 2004).........................................................................................................14, 15

*Imperial Tobacco Ltd. V. Philip Morris, Inc.*, 899 F.2d 1575 (Fed. Cir. 1990) .....................12, 13

*Metropolitan Publishing, Ltd. v. San Jose Mercury News*, 987 F.2d 637 (9th Cir. 1993) ........9, 15

*New West Corp. v. NYM Co. of California*, 595 F.2d 1194 (9th Cir. 1979).................................10

*Oakland Tribune, Inc. v. Chronicle Public Co., Inc.*, 762 F.2d 1374 (9th Cir. 1985)....................9

*Philip Morris Inc. v. Cigarettes for Less*, 69 F. Supp. 2d 1181 (N.D.Cal.), *aff'd*, 215 F.3d
1333 (9th Cir. 2000)..................................................................................................10

*Prudential Insurance Co. of America v. Gibraltar Finance Corp. of Cal.*, 694 F.2d 1150 (9th
Cir. 1982), *cert. denied*, 463 U.S. 1208 (1983) ......................................................................15

*Rivard v. Linville*, 133 F.3d 1446 (Fed. Cir. 1998)...........................................................12, 13

*Roe v. Anderson*, 134 F.3d 1400 (9th Cir. 1998), *aff'd sub nom. Saenz v. Roe,* 526 U.S. 489
(1999)......................................................................................................................... 9

*St. Ives Laboratories, Inc. v. Nature's Own Laboratories*, 529 F. Supp. 347 (C.D.Cal. 1981).....10

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393 (9th Cir. 1985) ................................14

*Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998).............10

*Vision Sports Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989).........................................9, 16

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

iii

1

**Federal Statutes**

2   Federal Trademark Act of 1946, as amended (the "Lanham Act"),
        15 U.S.C. § 1051 *et seq.*

3

    Section 35(a), 15 U.S.C. § 1117(a)..................................................................15

    Section 43(a), 15 U.S.C. § 1125(a)...........................................................2, 9, 10

    Section 45, 15 U.S.C. § 1127.................................................................9, 11

4

5

6

7

**State Statutes**

8   Cal. Bus. & Prof. Code §§ 14200-14342 ...............................................................9

9   Cal. Bus. & Prof. Code § 14335 ........................................................................10

10  Cal. Bus. & Prof. Code § 17200 ..........................................................................9

11  Cal. Bus. & Prof. Code § 17500 ......................................................................9, 10

12

**Treatise**

13

14  McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition (2001 ed.)..................10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

# I.    Introduction

This case involves competing claims to ownership of the name "CARITAS CREEK" as a service mark for environmental education and summer camp programs. Plaintiff, a non-profit provider of social services in the San Francisco Bay Area, has used the mark continuously and exclusively since 1985. The defendant corporation first used the name "CARITAS CREEK" as a service mark in 1975, but discontinued that use in 1985 when Plaintiff hired the corporation's principals as counselors and staff employees and began operating the programs at Plaintiff's Sonoma County camp facilities.

The individual Defendants include former employees and staff members of Plaintiff some of whom were discharged from their employment in January 2007 following their refusal to implement modifications in Plaintiff's environmental education programs mandated by Plaintiff in the interest of the children enrolled in Plaintiff's programs. Defendants are now planning their own environmental education and summer camp programs using Plaintiff's "CARITAS CREEK" service mark in direct competition with Plaintiff.

# II.    Summary of the Issue

Defendants' claim of priority hinges on their affiliation with a California corporation named "Caritas Creek" that first used the disputed mark in 1975. However, that corporation ceased operations and discontinued commercial use of the name "CARITAS CREEK" in 1985 when Plaintiff hired the corporation's principals as counselors and staff members for Plaintiff's environmental education and summer camp programs. The issue is whether the California corporation "Caritas Creek" legally abandoned any claim of right in the "CARITAS CREEK" service mark after 1985 by (1) discontinuing operations; (2) terminating commercial use of the mark; (3) declining to assert or exhibit any claim or evidence of ownership in the mark; and (4) failing to exercise the essential functions of service mark ownership such as control over use of

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

1  the mark or the quality of services rendered under the mark, for the entire 22-year period that

2  followed.

3  **III.    Statement of the Facts**

4      **A.    Background**

5

6  Plaintiff was founded in 1907 to care for the orphans of the San Francisco earthquake[1]

7  and currently operates more than 30 programs throughout San Francisco, Marin, and San Mateo

8  Counties.[2]  Plaintiff is well known in the Bay Area for these programs and is part of a larger

9  network of Catholic Charities and Catholic Youth Organizations.[3]  Since 1946, one of Plaintiff's

10  most popular programs has been a faith-based summer camp located in western Sonoma County.[4]

11

12

13

14

---

15  [1]    Verified Complaint, ¶ 12.  With approximately $40 million in annual revenues and
800 employees at multiple locations, Plaintiff is one of the largest non-profit providers of social
16  services in the San Francisco Bay Area.  Plaintiff provides services to persons of all faiths though
an agency of the San Francisco Archdiocese.  While Plaintiff is the social services and youth-
17  serving arm of the San Francisco Archdiocese, it is a separate non-profit organization with
approximately 85% of donations received by Plaintiff going directly into Plaintiffs' programs.
18  *Id.*

19  [2]    Verified Complaint, ¶ 13.  These programs are addressed to the needs of children,
families in crisis, single parents, the homeless, the elderly and disabled, those living with
20  HIV/AIDS, and refugees and immigrants.  Plaintiff's programs bring youth of all socioeconomic
backgrounds together to participate in organized athletic programs, summer camp, and
21  environmental education.  *Id.*

22  [3]    Verified Complaint, ¶ 14.

23  [4]    Verified Complaint, ¶ 15.  The camp is situated on 216 acres of redwood forest
and open meadow approximately six miles from the Pacific Ocean and walking distance from the
24  town of Occidental.  The camp features miles of wooded hiking trails, a large redwood
amphitheater/chapel accommodating up to 300 guests, a private lake, and a 6,000 square foot
25  lodge with surrounding decks.  The property has a second localized meeting hall, playing fields,
basketball and volleyball courts, a horseshoe pit, two full-size pools, and multiple camping and
26  campfire sites. Twenty-four heated cabins house up to twelve people each and have centralized
bathhouses, with additional apartments containing kitchens, living rooms, and separate bedrooms
27  and baths. The premises include a fully equipped and staffed main kitchen accommodating up to
250 people.  *Id.*

28

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

2

In 1975, a group of Oakland, California school teachers formed a California corporation named "Caritas Creek."[5]  In 1983, that corporation approached Plaintiff requesting the opportunity to begin operating the "CARITAS CREEK" Environmental Education Program ("EEP") at CYO's Sonoma County camp.[6]  Plaintiff agreed.  Caritas Creek's then-director, Paula Pardini, became Plaintiff's part-time employee with the title Director of the CYO's "CARITAS CREEK" EEP.[7]

Between 1983 and 1985, the California corporation still operated its own summer camp at the rented Mendocino location with Ms. Pardini as its director.[8]  In 1985, however, the corporation ceased operation of its summer camp in Mendocino.[9]

From 1985 to 2007, Plaintiff made substantial, exclusive and continuous use of the name "CARITAS CREEK" for its EEP[10] and, since 1985, Plaintiff's "CARITAS CREEK" EEP has been operated entirely by CYO employees.[11]  During this time, Plaintiff has expended approximately $9.6 million to operate and run the CYO "CARITAS CREEK" EEP,[12] plus $3.3 million in capital improvements.[13]

---

[5]    Verified Complaint, ¶ 16.  Concerned with getting Oakland-area teens and pre-teens off the streets, the founders of Caritas Creek began operating an environmental education program ("EEP") and summer camp at rented camp facilities in Mendocino, California.  *Id.*

[6]    Verified Complaint, ¶ 17.

[7]    *Id.*

[8]    Verified Complaint, ¶ 18.

[9]    *Id.* Ms. Pardini became the full-time Director of CYO Caritas Creek EEP and CYO Summer Camp.  Ms. Pardini served as the full-time director of both programs from 1985 through 1999, when she was replaced by Paul Raia.

[10]    Verified Complaint, ¶ 19.

[11]    Verified Complaint, ¶ 20.

[12]    *Id.*

[13]    Verified Complaint, ¶ 21.

3

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

Due to Plaintiff's substantial, exclusive and continuous use of the name "CARITAS CREEK" as a service mark for many years, and the success of the "CARITAS CREEK" EEP, the name "CARITAS CREEK" became well known, and is now well known, by the public in the San Francisco Bay area and beyond, as one of the most renowned EEP's of its kind.[14]

From 1985 to 2007, Plaintiff advertised and promoted its sponsorship of the "CARITAS CREEK" EEP. As a result of such advertising and promotion, coupled with the growing numbers of children enrolled, numbering in the tens of thousand to date, Plaintiff's "CARITAS CREEK" EEP became well known, and is now well known, by the public in the San Francisco Bay area and beyond, not only as one of the finest programs of its kind, but as an activity of the Catholic Charities and the Catholic Youth Organization.[15]

After 1985, the California corporation "Caritas Creek" never asserted or exhibited any claim or evidence of ownership in Plaintiff's "CARITAS CREEK" EEP, or in the name "CARITAS CREEK," nor did the corporation engage in any business to the best of Plaintiff's knowledge.[16] As far as Plaintiff is aware, the California corporation went out of business after ceasing operation of its own summer camp in 1985.[17] Certainly the California corporation made no use of the name "Caritas Creek" for any EEP or summer camp services after 1985.[18] If there

---

[14]    Verified Complaint, ¶ 22.

[15]    Verified Complaint, ¶ 23. Plaintiff's sponsorship of its "CARITAS CREEK" EEP is illustrated by an article from the September 28, 2001, edition of the San Francisco Chronicle, reproduced as Complaint Exhibit A, referring to "Camp Caritas Creek" as a "Catholic Youth Organization – affiliated camp;" and by an article from the September 10, 2000, edition of the Press Democrat Santa Rosa, reproduced as Complaint Exhibit B, referring to the "Catholic Youth Organization's camp program at Caritas Creek."

[16]    Verified Complaint, ¶ 25.

[17]    Verified Complaint, ¶ 26.

[18]    Verified Complaint, ¶ 27.

4

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

had been any such use, it would have been under the exclusive supervision and control of Plaintiff.[19]

After hiring the California corporation's principals as employees of Plaintiff's organization between 1983 and 1985, Plaintiff had no subsequent communication or relationship of any kind with, or awareness of, the California corporation.[20]  There was never any license or other understanding, written or verbal, between Plaintiff and the California corporation – or its principals – regarding Plaintiff's ownership and use of "CARITAS CREEK" as a service mark.[21] From 1985 to 2007, without interruption or exception, Plaintiff exercised exclusive supervision and control over use of the name "CARITAS CREEK" as a service mark and over the quality of programs offered under the name.[22]

**B.     Events Leading to this Controversy**

In recent years, disagreements developed between Plaintiff and Defendants about the curriculum, management and administration of Plaintiff's "CARITAS CREEK" EEP and summer camp program.[23]  These disagreements led Plaintiff to terminate the employment of the

---

[19]     Verified Complaint, ¶ 28.

[20]     Verified Complaint, ¶ 29.

[21]     Verified Complaint, ¶ 30.

[22]     Verified Complaint, ¶ 31.

[23]     Verified Complaint, ¶ 32.  Beginning in August 2006, CYO retained several external youth camping consultants to evaluate and audit both the Plaintiff's "CARITAS CREEK" EEP and the CYO Summer Camp program.  The external consultants reviewed all aspects of the two programs, including staffing, program content and overall safety issues involving staff and campers.  The consultants were unanimous in their assessment that camp counselors under the age of 18 should not function as "cabin leaders" with the grade school children enrolled in the camp.  Plaintiff also acted to curtail the degree of emotional intimacy exhibited by camp counselors toward children enrolled in the camp after one of the counselors made an elaborate confession to the children regarding his sexual orientation.  Another disagreement arose over Plaintiff's decision to alter the practice of unescorted "night hikes" on the camp property.  *Id.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

"CARITAS CREEK" staff in January 2007,[24] resulting in a suspension of Plaintiff's EEP. In late January 2007, however, Plaintiff's Executive Director Brian Cahill notified Plaintiff's "clients," *i.e.,* pastors and principals of schools whose students had attended the CYO "CARITAS CREEK" EEP and CYO Summer Camp, that although the Spring 2007 program had to be canceled due to the lay-offs and programmatic changes, Plaintiff was working diligently to hire staff for the 2007 Summer Camp and endeavoring to have "CARITAS CREEK" EEP in place for a Fall 2007 program.[25]

On January 21, 2007, one of the former "CARITAS CREEK" staff used Plaintiff's list server to send out an "open e-mail" to former campers and staff of Plaintiff's "CARITAS CREEK" EEP and CYO Summer Camp, addressed "Dear Beloved Camp Family," and copied to members of Plaintiff's Board of Directors, outlining Defendants' grievances against Plaintiff.[26]

---

[24]     In January 2007, Plaintiff's Executive Director Brian Cahill and Director of Programs and Services Dr. Glenn Motola advised the "CARITAS CREEK" staff that multiple programmatic and staffing changes, including those mentioned in the Verified Complaint, ¶32, were to be instituted based upon the external audit and concerns of senior staff. Defendants rejected the proposed changes and refused to implement these changes. Accordingly, Brian Cahill asked for and received the resignation of on-site Director Paul Raia. Other staff members indicated that they would not implement the proposed changes. Based upon this impasse, it was determined that the Spring 2007 "CARITAS CREEK" EEP would need to be canceled. On January 19, 2007, the remainder of the "CARITAS CREEK" EEP staff was laid off, although various staff members were encouraged to return to work at the 2007 CYO Summer Camp. Verified Complaint, ¶ 33.

[25]     Verified Complaint, ¶ 34. A copy of Mr. Cahill's notification letter is reproduced as Complaint Exhibit C. At no time has Plaintiff intended to discontinue permanently the CYO "CARITAS CREEK" EEP. Indeed, based upon the present pace of re-staffing for the 2007 Summer Camp, CCCYO believes it likely that there will be a Fall 2007 "CARITAS CREEK" EEP. *Id.*

[26]     Verified Complaint, ¶ 35. The communication incorrectly states that Plaintiff is discontinuing and shutting down the "CARITAS CREEK" EEP and CYO Summer Camp program, that Plaintiff is against diversity, and that Plaintiff opposes "hugging." The communication, reproduced as Complaint Exhibit D, concludes by attaching the private home addresses of Plaintiff's Board of Directors. *Id.* On January 23, 2007, Plaintiff released a statement, reproduced as Complaint Exhibit E, and distributed it to schools and parishes in the San Francisco Bay Area. Verified Complaint, ¶ 36. On January 27, 2007, Plaintiff issued an
...Continued

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

1    This and other statements by Defendants, some of them false and misleading, have created a

2    firestorm requiring Plaintiff to engage in a campaign of public education regarding the reasons

3

4    for temporary suspension of Plaintiff's "CARITAS CREEK" EEP.[27]

5            During the period of these events, Defendants sent out a wave of mass communications

6    addressed to school principals and faculty, on newly generated letterhead, bearing the name

7    "Caritas Creek" accompanied by the symbol "SM" to signify a claim of right in the name

8    "Caritas Creek" as a service mark.[28]

9
         On March 9, 2007, Defendants filed two service mark applications at the United States
10
     Patent and Trademark Office (PTO), U.S. Application Serial Nos. 77/127,627 and 77/127,619,
11
12   seeking registration of "CARITAS" and "CARITAS CREEK," respectively, as service marks for

13   day camp, recreational camps, and summer camps, claiming a first-use date of 1975.[29]  Plaintiff,

14   _____

15   *Continued from previous page*
     announcement, reproduced as Complaint Exhibit F, making it clear that "Camp is On." *Id.,* ¶ 37.
16   This announcement was sent to 4,500 present and past campers. *Id.*

17   [27]      Verified Complaint, ¶ 38.  An example of communications undertaken by Plaintiff
     for this purpose is the letter dated February 9, 2007, from Brian Cahill to camper Jessica Murphy,
18   reproduced as Complaint Exhibit G.

19   [28]      Verified Complaint, ¶ 39.  An example is Defendants' letter to the principal and
     faculty of St. Jerome Catholic School, reproduced as Complaint Exhibit H.
20
     [29]      Verified Complaint, ¶ 40.  Copies of these applications are reproduced as
21   Complaint Exhibits I and J, respectively.  The following day, March 10, 2007, Defendants filed a
     service mark application at the PTO, U.S. Service Mark Application Serial No. 77/127,640,
22   reproduced as Complaint Exhibit K, seeking registration of "CARITAS CREEK" and a logo, also
     as a service mark for day camp, recreational camps, and summer camps with a claimed first-use
23   date of 1975.  *Id.*  Contemporaneously, Defendants established a website at
     www.preservethevision.com, a partial print-out of which is reproduced as Complaint Exhibit L,
24   at which they concede Plaintiff's ownership of the "CARITAS CREEK" service mark. *Id.,* ¶42.
     Defendants also registered the Internet domain name CARITASCREEK.ORG and are in the
25   process of designing a website at www.caritascreek.org where they intend to advertise and
     promote the name "CARITAS CREEK" as a service mark for environmental education and
26   summer camp programs.  *Id.*  In response to Defendants' advertising and promotion of the name
     "CARITAS CREEK," Plaintiff has issued numerous communications to church pastors and
27   school principals such as the letters appended hereto collectively as Complaint Exhibit M.  *Id.,* ¶
28                                                                                              *...Continued*

                                              7

1  which until now never sought federal registration of "CARITAS CREEK," has now been issued a

2  certificate of registration for that service mark by the State of California.[30]

3

4      Plaintiff subsequently received a threatening letter dated April 27, 2007, from Mark

5  Swendsen, Esq., on behalf of Defendants, directing Plaintiff to cease and desist from further use

6  of the name "CARITAS CREEK." Attorney Swendsen's letter, reproduced as Complaint Exhibit

7  O, concludes:

8          We demand that you immediately identify, by name and address, the persons to

9  whom you have mailed your "CYO Camp Summer Camp 2007" brochure, and all other
mailings which claim to represent Caritas Creek[SM], and furnish us proof by 5/11/2007 that

10  you have mailed to them a correction, stating that you are no longer affiliated with Caritas
Creek[SM], and that Caritas Creek[SM] has its own programs not affiliated with Catholic

11  Charities CYO.

12          If you wish to license your use of Caritas Creek[SM], you may contact us to discuss

13  terms of licensing. Otherwise, we expect to receive your proof of correction by
5/11/2007.

14

15      Attorney Swendsen's letter contradicts Defendants' admission on their "Preserve the

16  Vision" website that Defendants' new camp "probably will not be called Caritas Creek or CYO

17  Summer Camp any more because CYO legally owns both names."[31] However, it reveals the

18  differences between the parties' positions and the urgency of Plaintiff's need for preliminary

19  injunctive relief.

20

21

22

---

23  *Continued from previous page*
43. On April 20, 2007, Plaintiff's Director of Programs and Services, Dr. Glenn Motola, sent a

24  report to the Caritas Advisory Group regarding the curriculum for Plaintiff's "CARITAS

25  CREEK" EEP. *Id.*, ¶ 44. A copy of the report is reproduced as Complaint Exhibit N.

26  [30]  *See* Plaintiff's California service mark registration, reproduced as Complaint
Exhibit P.

27  [31]  *See* Complaint Exhibit L, "Frequently Asked Question" No. 5.

28

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

8

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

## IV.    Argument

### A.    Standard for Preliminary Injunctive Relief

To obtain preliminary injunctive relief, a plaintiff must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *See Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998), *aff'd sub nom. Saenz v. Roe,* 526 U.S. 489 (1999).[32]  In cases involving trademark and service mark infringement,[33] irreparable injury is presumed upon a demonstration of likely success on the merits.[34]

### B.    Plaintiff is Likely to Prevail on the Merits of its Claim.

Count I of Plaintiff's Complaint alleges federal unfair competition, false representation and false designation of origin in violation of Section 43(a) of the Federal Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a).  Section 43(a) provides:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --

---

[32]    "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Id.  In any situation, the Court must find that there is some threat of immediate irreparable injury, even if that injury is not of great magnitude. *See Big Country Foods, Inc. v. Bd. Of Anchorage Alaska,* 868 F.2d 1085, 1088 (9th Cir. 1989)(citing cases); *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985)(citing cases).

[33]    The definitions of "trademark" and "service mark" are identical for purposes of this action. See Lanham Act Section 45, 15 U.S.C. 1127 ("any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish" a party's goods (or services) "and to indicate the source of the goods [services], even if that source is unknown").  "The same substantive rules of validity and infringement apply to service marks and trademarks. McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition, § 4:14 at 4-16 (2001 ed.).

[34]    *See Vision Sports Inc. v. Melville Corp.*, 888 F.2d 609, 612, n. 3 (9th Cir. 1989); *Metro Publishing, Ltd. v. San Jose Mercury News,* 987 F.2d 637, 640 (9th Cir. 1993).

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

SCHNADER HARRISON SEGAL & LEWIS LLP<br>LAW OFFICES OF<br>ONE MONTGOMERY STREET, SUITE 2200<br>SAN FRANCISCO, CA 94104-5501<br>(415) 364-6700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another, person, . . .

              \*         \*         \*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Counts II, III, V and VI of Plaintiff's Complaint are cumulative to Count I because proof of federal unfair competition under these facts establishes California statutory service mark infringement (Count II),[35] California statutory unfair competition (Count III),[36] California false advertising (Count V),[37] and California common law unfair competition (Count VI).[38]  Count IV

---

[35]    Under the California Trademark Law, Cal. Bus. & Prof. Code §§ 14200-14342, the registrant is afforded injunctive relief against use of a name or mark likely to cause confusion with goods or services sold under a federal or state registered mark. *See* Cal. Bus. & Prof. Code § 14335 (providing for relief against "[a]ny person who uses or unlawfully infringes upon a mark registered under this chapter or under Title 15 of the United States Code").

[36]    Cal. Bus. & Prof. Code § 17200; *see Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

[37]    Cal. Bus. & Prof. Code § 17500.  Under both this statute and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Defendant is guilty of false representation if his use of Plaintiff's trademark or service mark causes consumer confusion as to source; it is not necessary to prove actual confusion to succeed in a showing of false advertising. *St. Ives Laboratories, Inc. v. Nature's Own Laboratories*, 529 F.Supp. 347, 350 (C.D.Cal. 1981); *Friend v. H.A. Friend and Co.*, 416 F.2d 526 (9th Cir.) *cert. denied*, 397 U.S. 914 (1970).

[38]    *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 at 1178 (holding that the ultimate test for unfair competition and trademark infringement is exactly the same); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n. 2 (9th Cir. 1992)("[t]he elements of trademark infringement and unfair competition are "essentially the same"); *accord, New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979)(citations omitted); *Philip Morris Inc. v. Cigarettes for Less*, 69 F.Supp. 2d, 1181, 1184 (N.D.Cal.)*(*"There is no assertion that California's unfair competition laws require a different analysis than that indicated by federal law, and for purposes of the instant motion the Court will assume that they do not."), *aff'd*, 215 F.3d 1333 (9th Cir. 2000); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998)("When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims"); *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 2.03 (1991 ed.)("[w]hatever route one travels, whether by trademark infringement or unfair competition, the

...Continued

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

of Plaintiff's Complaint, in turn, alleging California dilution, requires consideration only if the Court finds that the parties are not in competition or that confusion is unlikely.[39]  In the present case, however, the parties are using the identical marks for identical services.  The question is not whether the parties are in competition, or whether their marks are confusingly similar, but who owns the mark.

          **1.**      **The California Corporation Abandoned Any Claim of Ownership in the "CARITAS CREEK" Service Mark After it Ceased Operations in 1985.**

Defendants' claim of priority in the "CARITAS CREEK" service mark flows from a California corporation that has made no commercial use of the mark since 1985.  Defendants' claim lacks any merit, and Defendants have no defense to this action, because the California corporation abandoned any claim of right in the mark after 1985 by (1) discontinuing operations,[40] (2) terminating its commercial use of the mark, (3) declining to assert or exhibit any

---

*Continued from previous page*
signs give direction to the same enquiry - whether defendant's acts are likely to cause confusion.").

[39]    *See* Cal. Bus. and Prof. Code § 14330; *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).  Plaintiff's dilution claim would survive even if the Court found that Defendants' use of "CARITAS CREEK" as a service mark was not likely to cause confusion, because even in the absence of likely confusion, Plaintiff's service mark is tarnished and blurred by Defendants' use of the mark within the meaning of the anti-dilution statute.  Plaintiff's mark is tarnished and blurred because Defendants do not employ the same policies and standards in connection with the relationship between staff and campers as those mandated by Plaintiff in the interest of the children under Plaintiff's supervision.  Indeed it was a dispute over these standards that led to the termination of the "CARITAS CREEK" staff in January 2007.

[40]    The fact that the California corporation maintained its corporate registration with the California Secretary of State for the 22 years that elapsed since the corporation last used "CARITAS CREEK" as a service mark, if proved, in no way precludes a finding that the service mark was abandoned. *Cf. Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996)(fact that non-profit lost corporate status held irrelevant to issue of abandonment of name as mark).

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

1    claim or evidence of ownership in the mark, and (4) failing to exercise the essential functions of

2    service mark ownership such as control over use of the mark or the quality of services rendered

3    under the mark, for the 22-year period that followed.

4

5    Section 45 of the Lanham Act provides that a mark "shall be deemed to be 'abandoned'":

6    (1)    When its use has been discontinued with intent not to resume such use. Intent not
        to resume may be inferred from circumstances. Nonuse for 3 consecutive years
7        shall be prima facie evidence of abandonment. "Use" of a mark means the bona
        fide use of such mark made in the ordinary course of trade, and not made merely
8        to reserve a right in a mark.

9    15 U.S.C. §1127; see generally Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc., 458

10   F.3d 931 (9th Cir. 2006). Neither "bona fide use" nor "ordinary course of trade" is defined in the

11   statute. Id., 458 F.3d at 936. Both phrases, however, also appear in the statute's definition of

12   "use in commerce," which provides:

13

14   The term "use in commerce" means *the bona fide use of a mark in the ordinary course of
     trade,* and not made merely to reserve a right in a mark. For purposes of this chapter, a
15   mark shall be deemed to be in use in commerce —
                    *               *               *
16   (2)    on services when it is used or displayed in the sale or advertising of services and
        the services are rendered in commerce, or the services are rendered in more than
17       one State or in the United States and a foreign country and the person rendering
        the services is engaged in commerce in connection with the services.
18

19   Id.; see Electro Source, 485 F.3d at 931.

20   When a *prima facie* case of abandonment is established by three years of non-use, the

21   resulting presumption "eliminates the challenger's burden to establish the intent element of

22   abandonment as an initial part of [his] case," and creates a rebuttable presumption that the other

23   party abandoned the mark without intent to resume use under the statute. *Rivard v. Linville,* 133

24

25   F.3d 1446, 1449 (Fed. Cir. 1998)(quoting *Imperial Tobacco Ltd. V. Philip Morris, Inc.,* 899 F.2d

26   1575, 1579 (Fed. Cir. 1990)). This presumption shifts the burden back to the party who allegedly

27   abandoned the mark to produce evidence that he either used the mark during the statutory period

28

12

1  or intended to resume such use. *Rivard,* 133 F.3d at 1449 (citing *Cerveceria Centroamericana*

2  *S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1026 (Fed. Cir. 1989)).[41]

3

4      A registrant's proclamations of intent to resume commercial use during the period of

5  nonuse – or in this case, after a 22-year period of nonuse - are awarded "little, if any, weight."

6  *Rivard,* 133 F.3d at 1449 (citing *Imperial Tobacco,* 899 F.2d at 1581). "In every contested

7  abandonment case, the respondent denies an intention to abandon its mark; otherwise there would

8  be no contest." *Imperial Tobacco, id.*

9

10     A party attempting to rebut a finding of abandonment may prove an absence of intent to

11 abandon the mark by showing "special circumstances which excuse nonuse." *Imperial Tobacco,*

12 *id.* To prove excusable nonuse, however, that party must produce evidence showing that, under

13 his particular circumstances, his activities are, or were, those that a reasonable businessman, who

14 had a bona fide intent to use the mark in United States commerce, would have undertaken. *Id.* In

15 such case the burden is on the party seeking to rebut the finding of abandonment to submit

16 evidence "with respect to what activities it engaged in during the nonuse period or what outside

17 events occurred from which an intent to resume use during the nonuse period may reasonably be

18 inferred." *Id.*

19

20     While nothing in the Lanham Act "excludes from the protections of the statute use of a

21 trademark by a struggling or even a failing business that meets these requirements,"[42] in the

22 present case the defendant corporation made no use of the name at all after 1985. Certainly it

23

---

24    [41]    The burden of persuasion remains with party seeking to prove abandonment by a preponderance of the evidence. *Cerveceria Centroamericana S.A.,* 892 F.2d at 1026.

25    [42]    *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.,* 458 F.3d 931, 936 (9th

26 Cir. 2006). In *Electro Source,* the Ninth Circuit held that even a limited use, in that case the sale of only a few items of merchandise for several years while the owner was winding his business

27 down, was sufficient to preclude a finding of abandonment. In the present case, by contrast, Defendants cannot point to any facts that would rebut a finding of abandonment.

28

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

made no use of the name as a service mark for environmental education or summer camp programs.

The 22-year period of nonuse in the present case is a more compelling basis than the three years necessary to establish a *prima facie* case of abandonment under the Lanham Act. In any event, the burden is on Defendants to rebut the presumption of abandonment. *Accord, Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996); *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir. 1985).

2. **Even if the California Corporation Had Intended to Retain Ownership of "CARITAS CREEK" as a Service Mark After 1985, it Abandoned Such Claim by Engaging in a "Naked License."**

After discontinuing operations when its principals were hired by Plaintiff as employees at Plaintiffs' environmental education and summer camp programs in 1985, neither the California corporation nor its principals had any intent to resume their own commercial use of the name "CARITAS CREEK" as a service mark. In any event they never exhibited such intent during the entire 22-year period that followed.

However, even if the California corporation or its principals *had* harbored such an intent, it was Plaintiff, and not Defendants, who exercised supervision and control over use of the mark and the services rendered under the mark after 1985. Therefore, if the California corporation continued to own the mark, then the relationship between the California corporation and Plaintiff would have amounted to a "naked license," constituting a separate ground for a finding of abandonment. *See Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002);[43] *Halo Management, LLC v. Interland, Inc.*, 76 USPQ2d 1199, 64 Fed.R.Evid.

---

[43]     In *Barcamerica*, the Ninth Circuit affirmed a district court finding that a trademark owner abandoned its mark by engaging in naked licensing without any control over the quality of goods produced by its licensee, where the licensor failed to make even a minimal effort
...*Continued*

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

1    Serv. 1077 (N.D.Cal. 2004);[44] *First Interstate Bancorp. v. Stenquist*, 18 USPQ2d 1159 (N.D.Cal.

2    1990).

3

4    In regard to abandonment through naked licensing, the facts of this case resemble those in

5    *First Interstate Bancorp, id.,* where the plaintiff owned a network of banks and other financial

6    institutions collectively doing business under a service mark registered first in California and

7    subsequently with the United States Patent and Trademark Office.  As in the present case, the

8    defendant's first use predated that of the plaintiff, but the court held that the defendant abandoned

9    any rights it had in the trademark by issuing a "naked license" to use the mark without exercising

10   significant control over the quality of the services provided by the licensee.  The court granted

11   the plaintiff's motion for summary judgment on its infringement claim, holding that that although

12

13   the defendant "renewed" his use after previously abandoning the mark, such renewed use was

14   undertaken, as in the present case, with constructive notice (and, in the present case, actual

15   notice) of the plaintiff's superior rights.

16           **3.    Failing to Recognize Plaintiff's Ownership of "CARITAS CREEK" as**
17                   **a Service Mark Would Work a Forfeiture on Plaintiff.**

18       It is said that abandonment, "being in the nature of a forfeiture, must be strictly proved."

19   *Prudential Ins. Co. of America v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir.),

20   *cert. denied,* 463 U.S. 1208 (1983).  Although the Ninth Circuit "has not spoken as to what

21

22   *Continued from previous page*
     by annual sampling of an adequate number of wine bottles to ensure that its licensee's wines
23   bearing its mark were of sufficient quality to retain the mark.

24       [44]    In *Halo Management,* the court held that the plaintiff abandoned its mark by
25   entering into a "naked license" under which the plaintiff retained no express contractual right to
     inspect or supervise the company's conduct.  The plaintiff's quality control efforts consisted of
26   little more than a short series of requests to review unspecified products and material.  The court
     held that such transparent post hoc gestures were not sufficient to revive an abandoned mark, nor
27   did they function as adequate "quality controls."

28

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

15

'strictly proved' means," *Electro Source,* 458 F.3d at 935, the fact is that an egregious forfeiture would result in the present case from the Court's failure to recognize the equities inhering in *Plaintiff's* investment of 22 years and millions of dollars in the development of its "CARITAS CREEK" environmental education programs and the goodwill of the service mark.

Plaintiff has a substantial and continuous investment in ownership and use of the name "CARITAS CREEK" as a service mark. As a result of that investment, the mark is associated by the public as a Catholic Charities and Catholic Youth Organization – affiliated program – a direct reference to Plaintiff. Tens of thousands of school children have attended Plaintiff's "CARITAS CREEK" programs, and the name "CARITAS CREEK" is widely known by school principals, church pastors, parents, and, most importantly, by the children themselves, as the name of programs offered by Plaintiff. Failure to recognize Plaintiff's rights in the "CARITAS CREEK" service mark would strip Plaintiff of all the goodwill accumulated in that name over the last 22 years.

### C.    Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief.

Irreparable injury in the case of trademark and service mark infringement is presumed upon a demonstration of likely success on the merits.[45] The reason for that presumption is clear on these facts. In the absence of interlocutory relief, Plaintiff will be stripped of its exclusive right to use the name and service mark developed by Plaintiff over 22 years. While monetary

---

[45]    *See Vision Sports Inc. v. Melville Corp.,* 888 F.2d 609, 612, n. 3 (9th Cir. 1989); *Metro Publishing, Ltd. v. San Jose Mercury News,* 987 F.2d 637, 640 (9th Cir. 1993).

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

1  damages for infringement are available and will be asserted,[46] damages cannot restore the loss of

2  exclusivity or compensate the injury to the intangible goodwill of Plaintiff's service mark.

3

4       **D.**    **Defendants' Use of Plaintiff's "CARITAS CREEK" Service Mark is Damaging to The Public Interest.**

5       In addition to being well known, the name "CARITAS CREEK" is understood by the

6

7  public as a reference to a "Catholic Youth Organization" and "Catholic Charities" program.  The

8  public associates the name "CARITAS CREEK" with Plaintiff, a religious organization and one

9  of the largest and oldest non-profit charitable institutions in the San Francisco Bay area.  For 22

10  years, parents who sent their children to Plaintiff's "CARITAS CREEK" environmental

11  education programs and Plaintiff's summer camp programs knew that the standards of conduct

12  and philosophy governing those programs were sponsored, , administered, supervised and

13  controlled by Plaintiff.

14

15       Now, Defendants have taken the "CARITAS CREEK" service mark and are using it to

16  promote their own intended environmental education and summer camp programs.  Members of

17  the public who encounter Defendants' use of the "CARITAS CREEK" service mark are therefore

18  likely to believe, erroneously, that Defendants' environmental education and summer camp

19  programs are sponsored, endorsed, or approved by the Catholic Charities and Catholic Youth

20  Organizations.  In light of the fact that the differences between the parties that led to this dispute

21  relate specifically to the eligibility and conduct of camp counselors and staff employees in

22  relation to the children enrolled in the parties' programs, the public interest against confusion

23  between the two parties can hardly by overstated, apart and aside from the irreparable injury to

24  Plaintiff resulting from Defendants' actions.

25

26  **V.**    **Conclusion**

27  ---

[46]    *See* Lanham Act, Section 35(a), 15 U.S.C. § 1117(a).

28

SCHNADER HARRISON SEGAL & LEWIS LLP
LAW OFFICES OF
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*

1    After 22 years of exclusive use and millions of dollars in investment, Plaintiff owns the

2    name "CARITAS CREEK" as a service mark for environmental education programs.

3

4    Defendants' misappropriation of that service mark constitutes federal unfair competition, false

5    representation and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C.

6    § 1125(a), and related California law, causing irreparable injury to Plaintiff and damage to the

7    public interest.  For this reason, and all the reasons discussed above, the Court should grant

8    Plaintiff's motion for a preliminary injunction.

9         Respectfully submitted,

10   Dated: May 16, 2007.

11                                SCHNADER HARRISON SEGAL & LEWIS LLP

12

13

14   By_____

15        MATTHEW F. MILLER
          BRUCE A. McDONALD (*pro hac vice* Application
          Pending)
16        Attorneys for Plaintiff CATHOLIC CHARITIES
          CYO
17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction
*Catholic Charities CYO v. Gordon et al.*