TOWNSEND AND TOWNSEND AND CREW LLP
PAUL W. VAPNEK (State Bar No. 36576)
JOHN E. LORD (State Bar No.216111)
JUDITH M. SCHVIMMER (State Bar No. 230285)
Two Embarcadero Center, 8th Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: pwvapnek@townsend.com
jelord@townsend.com
jmschvimmer@townsend.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CATHOLIC CHARITIES CYO, a California non-profit corporation,

Plaintiff,

v.

MARY M. GORDON, A California resident; ERIK "WITAKAE" OBERG, a California resident; EMILY WOOD ORDWAY, a California resident; PAULA PARDINI, a California resident; and CARITAS CREEK, a California corporation;

Defendants.

Case No. C 07-02658 SI

**DECLARATION OF ERIK "WITAKAE" OBERG, IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**DATE:** August 17, 2007
**TIME:** 9:00 a.m.
**DEPT:** Courtroom 10, 19th Floor
**JUDGE:** The Honorable Susan Illston

I, Erik "Witakae" Oberg, declare as follows:

1. I am over 18 years of age and am competent to give this Declaration. The facts stated in this Declaration are known to me personally except as otherwise stated herein. If called as a witness in this matter I would be competent to testify concerning them.

2. My name is Erik "Witakae" Oberg. I am an independent program consultant for environmental education programs. I submit this declaration based on my personal knowledge of the matters set forth herein.

3. I was a Teacher/Naturalist at Caritas Creek Environmental Education Program from January 2002 until January 2005, and then a Site Director from then until January 2007, when my employment contract was terminated along with those of the other Caritas Creek staffers.

4. In mid-January 2007, I reported to camp for training and preparation for the spring environmental education programs. During the week of January 11 – 17, I and a group of others were to be doing classroom visits and parent presentations, activities crucial for preparation for the season. To our surprise, we were notified upon arrival that we were prohibited from doing these tasks. We let CYO know that we were going to fall extremely behind if we lost that important week of preparation. CYO did not address our concerns.

5. We were notified of a meeting scheduled for January 17, which all returning Teacher/Naturalists and other staff were to attend. The Teacher/Naturalists had been scheduled to report to camp on January 18, so this was a change of schedule for them.

6. Present at the January 17 meeting were the staff of Caritas Creek and a number of representatives of CYO, namely, Director of Programs Glenn Motola, Jennifer Bilyk, Tere Brown, and Steve Grant. Paul Raia was not involved in the meeting, and when members of staff inquired as to his whereabouts, we were deceptively informed that he chose not to attend.

7. Dr. Motola presented us with a list of about eleven changes that he wanted made to the Caritas program. The staff met independently and agreed all but three of the changes. The three which we could not endorse dropping were the socio-economic mixing of cabin groups and two traditional activities called "Celebration" and "Serendipities," communicative activities through which the campers processed their experiences and shared them with their groups, gaining deeper understanding of themselves, each other, and the world.

8. When we rejoined the meeting, we told Dr. Motola that we may agree to change certain aspects of the Celebration and Serendipities, but we were not willing to get rid of them altogether. We requested more clarity on the requested changes and information concerning what would happen if we did not accept the changes.

9. Dr. Motola commented at that meeting that the next year would be very different, with a different program and likely a different name. He said that the environmental education program

would probably not be called Caritas Creek, giving the impression to those of us present that CYO had no interest in continuing its association with the Caritas Creek program or name.

10. We were told that we would meet again on January 19 to continue our discussion.

11. I attended the meeting on January 19, along with the Caritas Creek staff and Dr. Motola, Jennifer Bilyk, Steve Grant, Alexander Lawrence (Human Resources Director for CCCYO), and Executive Director Brian Cahill. Paul Raia was again not invited to attend.

12. Very quickly after commencing the meeting, Brian Cahill told us that, due to the staff's unwillingness to compromise, and the lost administrative work time caused by CYO's prohibition of our work the previous week, he had to "pull the plug" on Caritas Creek. He stated that the environmental education program would be "re-tooled." He did not say when camp would reopen.

13. After announcing the end of the Caritas Creek program, Mr. Cahill informed all of us that our employment was terminated and that we needed to leave our housing. We each received two weeks severance pay and eviction notices telling us that we had 60 days to move out of staff housing. This caused an enormous problem for several staff members who had given up their housing, both locally and on the east coast, with the expectation that they had employment and housing for the season.

14. At the January 17 meeting, Dr. Motola told us that he understood that we might not be comfortable with the changes CYO was demanding, and he told us that we had his blessing to go "take your program" somewhere else if that is what we wanted to do.

15. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of July, 2007, at Sebastopol, California.

By: ______________________
Erik "Witakae" Oberg