MATTHEW F. MILLER (State Bar No. 172661)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: (415) 364-6700
Fax: (415) 364-6785
Email: mmiller@schnader.com

BRUCE A. McDONALD, *pro hac vice*
SCHNADER HARRISON SEGAL & LEWIS LLP
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 2006
Telephone: (202) 419-4235
Fax: (202) 419-3454
Email: bmcdonald@schnader.com

Attorneys for Plaintiff and Counter-Defendant
CATHOLIC CHARITIES CYO

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHOLIC CHARITIES CYO,<br><br>  Plaintiff and Counter-Defendant,<br><br>  v.<br><br>MARY W. GORDON, et al.,<br><br>  Defendants and Counter-Claimants. | Case No. C 07-02658 SI<br><br>**PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS** |

Plaintiff and Counter-Defendant Catholic Charities CYO (hereafter "Plaintiff") answers the counterclaims of Defendants and Counter-Claimants Mary W. Gordon *et al.* (hereinafter "Defendants") as follows:

1. Plaintiff admits that this is an action for federal unfair competition and false designation of origin under Section 43(a) of the Federal Trademark Act of 1946, as amended (the "Lanham Act")), 15 U.S.C. § 1125(a); California statutory unfair competition under Cal. Bus. & Prof. Code § 17200; and common law unfair competition.

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

2. Plaintiff admits that the Court has subject matter jurisdiction pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367; that Plaintiff engages in activities that affect interstate commerce; that the amount in controversy exceeds $75,000, exclusive of interests and costs; and that those causes which arise under the common law or statutes of the State of California are pendent or ancillary causes under 28 U.S.C. § 1338(b) and are subject to the Court's supplemental jurisdiction.

3. Plaintiff admits that the Court has personal jurisdiction over Plaintiff.

4. Plaintiff admits that venue is proper in this District pursuant to 28 U.S.C. §1391.

5. Plaintiff admits that Caritas Creek is a California corporation having its office in this District, but denies that Caritas Creek was an existing California corporation for the twenty-year period that followed the suspension of the company's corporate charter by the California Secretary of State on January 2, 1987. Plaintiff states further that Defendants reinstated the company's corporate charter on or around February 26, 2007, as a means to create the false appearance that the company was a valid and existing corporation for the twenty-year period from 1987 – 2007, and that Defendants' California corporation is therefore a sham for purposes of this proceeding.

6. Plaintiff admits that it is a non-profit corporation whose headquarters are located at 180 Howard Street, Suite 100, San Francisco, California 94105, in this District.

7. Plaintiff denies that "Caritas Creek is child of the 70's." According to the records of the California Secretary of State, the defendant corporation went out of existence after its corporate charter was suspended on January 2, 1987, and was reinstated only on February 26, 2007. Plaintiff therefore denies all of the allegations in Defendants' Counterclaim which refer to "Caritas Creek" as though the latter were an existing entity at any time after January 2, 1987, and prior to February 26, 2007, including but not limited to the allegations in Paragraph 7 of Defendants' Counterclaim.

8. Plaintiff lacks knowledge, information and belief as to the allegations in Paragraph 8 of Defendants' Counterclaim and demands strict proof thereof.

-2-

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

9. Plaintiff lacks knowledge, information and belief as to the allegations in Paragraph 9 of Defendants' Counterclaim and demands strict proof thereof.

10. Plaintiff lacks knowledge, information and belief as to the allegations in Paragraph 10 of Defendants' Counterclaim and demands strict proof thereof.

11. Plaintiff lacks knowledge, information and belief as to the allegations in Paragraph 11 of Defendants' Counterclaim and demands strict proof thereof.

12. Plaintiff denies that Father Michael Harriman, then Associate Director of CYO, "approached the Caritas Creek Board of Directors" in 1975. In fact, Father Harriman was approached by the Defendants. Plaintiff admits the remaining allegations in Paragraph 12 of Defendants' Counterclaim.

13. Plaintiff denies that the CYO facility was "extremely underdeveloped" during the relevant period of time and states further that Plaintiff invested millions of dollars in the development and operation of the Caritas Creek program after the program was acquired by Plaintiff in 1983.

14. Plaintiff admits that the rental arrangement between CYO and Defendants continued from 1979 until 1983. Plaintiff further admits that, by 1983, Defendants had accumulated a substantial debt to Plaintiff. Plaintiff lacks knowledge, information and belief as to the degree of difficulty that Defendants would have experienced in the retirement of that debt. Moreover, Plaintiff denies that Father Harriman proposed a "partnership" with Defendants. On the contrary, Defendants became employees of Plaintiff after 1983. Plaintiff also lacks knowledge, information and belief regarding the degree to which Defendants were hesitant to give up their autonomy but states that Defendants did, in fact, give up such autonomy when they became employees of Plaintiff after 1983. Plaintiff likewise lacks knowledge, information and belief as to Defendants' alleged desire to form a "partnership" with Plaintiff, but denies that the parties' relationship after 1983 constituted a "partnership" under California law. Plaintiff admits that Plaintiff assumed Defendants' debts in 1983 and thereafter managed the finances of the Caritas Creek program, but denies that Plaintiff's role was limited to management of the program's finances. Plaintiff specifically denies that Defendants "ran their program through

-3-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

1  CYO." In fact, CYO ran the Caritas Creek program after 1983 with Defendants acting in the
2  capacity as Plaintiffs' employees. Plaintiff denies that Defendants after 1983 retained ultimate
3  control over the Caritas Creek program philosophy, content, direction, and staffing. On the
4  contrary, Plaintiff's control over such matters as staffing was evinced by the termination of
5  Defendant Paula Pardini in March 2000. Plaintiff admits that Defendants were required to pay
6  an administrative fee to CYO but denies that capital improvements were ever financed by
7  Defendants. Plaintiff lacks knowledge, information and belief as to the remaining allegations in
8  Paragraph 14 of Defendants' Counterclaim regarding Defendants' subjective intent in 1983.

       15.    Plaintiff denies that the two 1983 documents asserted by Defendant in Paragraph 15 of Defendants' Counterclaim are relevant or admissible to show Plaintiff's intent, except to the extent that the provision in the 1983 "agreement," appended as Exhibit 1 to Defendants' Counterclaim, calling for the program to be named "Caritas – CYO," was struck by Plaintiff's then associate director, Father Michael Harriman, and replaced with the name "CYO – Caritas" as a reflection of Plaintiff's ownership of and authority over the Caritas Creek program. Plaintiff states further that Father Harriman never signed the 1983 document and, on information and belief, the document was never signed by any representative of Plaintiff.

       16.    Plaintiff admits that the 1983 "agreement" appended to Defendants' Answer and Counterclaim is accurately described in Paragraph 16 of Defendants' Counterclaim. However, Plaintiff denies that the document legally constitutes an "agreement" or contract in that there exists no evidence of meeting of the minds or execution of the document. Rather, Plaintiff's Associate Director states he did not sign this document. Further, Plaintiff states that the description is incomplete because it omits any reference to the paragraph which consists of a provision proposed by Defendants calling for the program to be named "Caritas – CYO." That provision was struck by Father Harriman (or struck at his direction) and replaced with the name "CYO – Caritas" to reflect Plaintiff's ownership of and authority over the Caritas Creek program.

       17.    Plaintiff denies that the name "CYO-Caritas" was chosen by the parties to reflect a "partnership" under California law. Plaintiff states that Defendants proposed to name the

-4-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

program "Caritas – CYO" and that the provision to that effect was struck by Plaintiff's then associate director Father Harriman and replaced with the name "CYO – Caritas" to reflect Plaintiff's ownership of and control over the Caritas Creek program. Plaintiff states further that the 1983 document was never signed by Father Harriman and, on information on belief, was never signed by any representative of Plaintiff.

18.     Plaintiff denies that the unsigned 1983 "agreement" calls for "each party [to] retain[] ownership of its equipment." In fact, the "agreement" addresses only Defendants' planned retention of its own equipment, although the discrepancy is immaterial for purposes of this case. Plaintiff admits that the unsigned 1983 document provides that the parties are not responsible for each others' future debts. In reality, however, Plaintiff did in fact assume all debts subsequently incurred by the "new" Caritas Creek program after 1983.

19.     Plaintiff admits that at the bottom of the unsigned 1983 document appended to Defendants' Counterclaim as Exhibit 1, there is a single handwritten notation, "Logo – This year we will allow CYO to use our logo for this year Sept. 83 – Sept. 84 and must be renewed each year." However, Plaintiff's then associate director, Father Harriman states that he would have refused to sign the document with such handwritten notation inserted by Defendants calling for "use [of] our logo" because such statement would not have been consistent with Plaintiff's ownership of the "new program." On information and belief, no representative of Plaintiff ever signed the 1983 document. Therefore, assuming that the handwriting on the unsigned document reflected the intention of the individual who placed that notation on the document, it does not follow that the unsigned document reflects the intention of either party, inasmuch as Defendants' subsequent decision to become employees of Plaintiff, in the *absence* of a signed agreement purporting to retain ownership of the "Caritas Creek" name, reflected Defendants' acquiescence in Plaintiff's acquisition of the "Caritas Creek" name along with the Caritas Creek program. With reference to the remaining allegations in Paragraph 19 of Defendants' Counterclaim, Plaintiff lacks knowledge and information regarding Defendants' desire in 1983 to "ensure [their] ability to walk away from the table with what was brought to it if the arrangement were not to work out," but states that, contrary to such asserted "desire," Defendants did thereafter

-5-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

1  voluntarily become Plaintiff's employees in the absence of any signed agreement addressing
2  ownership of the "Caritas Creek" mark; that no "license" of the "Caritas Creek" name was ever
3  asserted by Defendants or "renewed" as called for by the handwritten notation; and that, over the
4  24-year period that followed, Defendants did thereby acquiesce in Plaintiff's acquisition of the
5  "Caritas Creek" name along with the Caritas Creek program.

6      20.    Plaintiff lacks knowledge, information and belief as to the "second document
7  from 1983" alleged by Defendants in Paragraph 20 of their Counterclaim and appended as
8  Exhibit 2 to Defendants' Counterclaim. However, Plaintiff denies that the document has any
9  materiality to the parties' dispute. To the extent that the document reflects an intention by
10 Defendants in 1983 to retain "all rights and privileges in the hiring and firing of the
11 Teacher/Naturalist staff," any continuing claim to such "rights and privileges" was abandoned by
12 Defendants upon becoming Plaintiff's paid employees subject to Plaintiff's at-will employment
13 policies.

14     21.    Plaintiff admits that in or around 1984, Defendant Paula Pardini accepted the
15 position of directorship of a new CYO division called Outdoor Ministry which included the
16 Caritas Environmental Education Program, the summer camp, and a ropes course, and that
17 Defendants discontinued holding their summer camp in Mendocino.

18     22.    Plaintiff admits that from 1983 to the early 90's, there were minimal conflicts
19 between CYO and Defendants. Plaintiff also admits that CYO's leadership consisted of
20 Executive Director Mike Marovich and Associate Director Father Michael Harriman, each of
21 whom was enthusiastic supporters of the Caritas program. However, Plaintiff denies that, during
22 these years, Frank Sottile and Paula Pardini led the Caritas Creek program "with virtually no
23 oversight or input from CYO in the leadership and operations of the program." Plaintiff admits
24 that Defendants "recruited schools, signed . . . contracts with schools, scheduled camps, hired
25 and trained staff, designed the program, created new activities, and conducted weekly and
26 seasonal evaluations of the staff and program activities to determine if they were valid and
27 supportive of the core mission." Plaintiff states, however, that Defendants conducted these
28

-6-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

activities in their capacity as *employees of Plaintiff* and in fulfillment of their designated job responsibilities.

23. Plaintiff does not understand Defendants' characterization of the parties' relationship as "symbiotic" and therefore denies that characterization. Plaintiff admits that Mike Marovich's position was filled by Brian Cahill. Plaintiff denies that Glen Motola filled Father Harriman's position or that Dr. Motola was hired in 1993. Plaintiff denies the inference in Paragraph 23 of Defendants' Counterclaim that Plaintiff had expectations of Defendants that were incompatible with the parties' original understandings or otherwise inappropriate. Moreover, Plaintiff denies that it had any expectations of "Caritas Creek" directors on the grounds that the California corporation "Caritas Creek" went out of existence in 1987 and therefore had no "directors." Plaintiff further denies the allegations of Paragraph 23 on the grounds that the "Caritas Creek directors" referenced by Defendants were *employees of Plaintiff*. Plaintiff lacks knowledge, information and belief regarding the subjective feelings of Plaintiff's employees in regard to Plaintiff's expectations, but states that Plaintiff's expectations were reasonable at all times and wholly within the parameters of Plaintiff's rights and responsibilities as the owner and operator of the Caritas Creek program.

24. Plaintiff lacks knowledge, information and belief regarding the subjective perception of its employees in 1995, or whether such employees "seriously considered withdrawing Caritas Creek EEP from CYO." However, Plaintiff denies that its employees possessed the authority to "withdraw Caritas Creek EEP from CYO." Moreover, Plaintiff denies that the Caritas Creek program was "compromised" by Plaintiff in any manner or degree. Plaintiff denies that any reasonable requests to CYO were ignored or refuted, and denies that any costs imposed on Defendants were unjust or excessive.

25. Plaintiff lacks knowledge, information and belief as to whether Defendant Paula Pardini became "exhausted and disillusioned in her role as Director of Caritas Creek" but states that Defendant Pardini ceased to perform her duties and responsibilities in a manner that was satisfactory to Plaintiff, and that Plaintiff therefore terminated her employment in March 2007.

-7-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

26. Plaintiff lacks knowledge, information and belief as to whether Defendant Pardini was in the process of securing another position, but admits that Plaintiff terminated her employment as director of the Caritas Creek program in March 2000. Plaintiff admits that Defendant Pardini was succeeded by Paul Raia, who was "CYO's [not Defendants'] chosen replacement as director."

27. Plaintiff admits that Paul Raia continued to serve as director of the Plaintiff's Caritas Creek program after March 2000, but states that Mr. Raia continued in this capacity as an *employee of Plaintiff*. Plaintiff lacks knowledge, information and belief regarding the remaining allegations in Paragraph 27 of Defendants' Counterclaim, including the extent to which Mr. Raia consulted with Ms. Pardini or the "Caritas Creek family" after March 2000. Plaintiff does not know to whom Defendants are referring as the "Caritas Creek family" but states that Mr. Raia did consult with and take direction from Plaintiff, as his employer, after 2000.

28. Plaintiff admits that tensions between the parties rose after 2000 but denies that the reasons for those tensions are accurately portrayed in Paragraph 28 or elsewhere in Defendants' Counterclaim.

29. Plaintiff admits the substance of Paragraph 29 regarding Glenn Motola's visits to the Caritas Creek facility in 2005 but denies the inference that there was anything improper or incorrect about the concerns of Plaintiff that Dr. Motola conveyed to Defendants during those visits, or that Defendants had any grounds to be "severely offended" by such concerns. Plaintiff denies the assertion regarding alleged "special sessions" for "poor kids."

30. Plaintiff denies that Dr. Motola disparaged the leadership or programs of Caritas Creek except to the extent that he articulated Plaintiff's legitimate concerns in a manner and extent that did not please the Defendants. Plaintiff states further that the anxieties expressed by Dr. Motola regarding the welfare of children under the supervision of the Caritas Creek staff were justified by complaints received by Plaintiff regarding the quality of such supervision.

31. Plaintiff admits that meetings were held in late 2006 and early 2007 but denies the inference that Mr. Raia was improperly excluded from such meetings. Plaintiff further denies that Dr. Motola had proposed to terminate the Caritas Creek program but admits that problems

-8-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

with the quality of staffing in the program led Plaintiff to consider suspending the program. Plaintiff states further that such a decision would have been within Plaintiff's rights and responsibilities as the owner and operator of the program.

32. Plaintiff admits that its staff reported to camp for training in mid-January 2007 and that meetings were held on January 17 and 19 of this year. Additional meetings between Paul Raia and Brian Cahill occurred on January 16 and 19, 2007.

33. Plaintiff admits that the first meeting involved Caritas Creek staff and CYO representatives Glen Motola, Jennifer Bilyk, Tere Brown and Steve Grant. Plaintiff denies the inference that Mr. Raia was improperly excluded from this meeting. Plaintiff admits that Dr. Motola presented the staff with a list of changes that Plaintiff required in the Caritas Creek program. Plaintiff lacks knowledge, information and belief regarding subsequent or contemporaneous independent meetings among the Caritas Creek staff. Plaintiff admits that the parties differed regarding the activities known as "Celebrations" and "Serendipities" but asserts that Plaintiff's concerns were justified by input from external consultants, Plaintiff's senior management and complaints received by Plaintiff from parents of children who had been participants in such activities. Plaintiff denies that it proposed "dropping" "celebrations" or "serendipities."

34. Plaintiff admits that Defendants expressed an unwillingness to adopt the programmatic reforms required by Plaintiff and that Defendants inquired about the consequences that would ensue if they refused to do so.

35. Plaintiff admits that Defendants' questions were answered in the subsequent meeting on January 19, 2007, and that the meeting was attended by the individuals identified by Defendants in Paragraph 35. Plaintiff again denies the inference that Mr. Raia was improperly excluded from this meeting. Plaintiff admits that statements by its representatives during this meeting may have been perceived by Defendants as abrupt. However, Plaintiff asserts that Plaintiff was not only within its rights, but acting in conformance with its responsibilities and duties in terminating the Defendants' employment as a result of Defendants' refusal to

-9-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

1  implement specific reforms that Plaintiff deemed necessary in the interest of the children
2  enrolled in the Caritas Creek program.

3   36.   Plaintiff admits that Plaintiff terminated the employment of Defendants and their
4  staff but denies that Plaintiff acted improperly or without justification in doing so. Plaintiff
5  admits that it provided three weeks of severance pay to Defendants and their staff but denies the
6  inference that there was anything improper in doing so.

7   37.   Plaintiff denies that Dr. Motola stated that Plaintiff intended to change the name
8  of the Caritas Creek program. Plaintiff has no knowledge regarding any "impression" its former
9  staff may have had following termination but denies that Plaintiff advised it would move forward
10 with a new name.

11  38.   Plaintiff admits that the "Caritas Creek" name was used continuously from 1975
12 to 2007 but asserts that use of the name after 1983 inured to the benefit of Plaintiff as the owner
13 of the program and employer of Defendants. In fact, the "new program" initially was titled the
14 "CYO Caritas Environmental Education program" and subsequently more often titled the "CYO
15 Caritas Creek Environmental Education program." Plaintiff denies that "Caritas Creek"
16 compensated Plaintiff for anything after 1983 and states again that Defendants' repeated
17 references to "Caritas Creek" during the period of 1987 - 2007 as a legal entity capable of
18 owning a service mark registration are inaccurate and misleading. They are inaccurate and
19 misleading because Defendants' California corporation went out of existence in 1987 and was
20 defunct until February 2007 when it was resurrected by Defendants in an effort to negate the
21 reality that Defendants abandoned their claim of ownership in the "Caritas Creek" name, if not in
22 1983, then during the 24-year period that followed. Contrary to the allegations in Paragraph 38
23 of Defendants' Counterclaim, in 1983 Defendants did, in fact, "give up sole control of the
24 leadership or programs of Caritas Creek Environmental Education Program" upon becoming
25 Plaintiff's at-will employees in exchange for relief from debt. Plaintiff denies the remaining
26 allegations in Paragraph 38.

-10-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

## ANSWER TO FIRST COUNTERCLAIM

39. Plaintiff incorporates by reference its answers to Paragraph 1 through 38 of Defendants' Counterclaim.

40. Plaintiff denies that "Counterclaimant," referring to the defendant California corporation, made substantial, continuous *or* exclusive use of the name "Caritas Creek" after it went out of existence in 1987. Plaintiff further denies that, as between the parties, Defendants made *exclusive* use of the name "Caritas Creek," inasmuch as Plaintiff used the mark in its capacity as owner of the "CYO Caritas Environmental Education program" from 1983 to the present. Plaintiff states further that all use of the name "Caritas Creek" by Defendants after 1983 was in their capacity as *employees of Plaintiff* and therefore inured to the benefit of Plaintiff.

41. Plaintiff denies that Plaintiff is or ever was a licensee of Defendant. On the contrary, Defendants were employees of Plaintiff during all times material to this matter. Plaintiff acquired the "Caritas Creek" program in 1983 and exercised ultimate control of the program at all times thereafter. Plaintiff is therefore the lawful owner of the "Caritas Creek" service mark and it is Defendants, not Plaintiff, who are engaged in unfair competition, false representations, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42. WHEREFORE Plaintiff reiterates its demand for judgment against Defendants as set forth in Plaintiff's Complaint.

## ANSWER TO SECOND COUNTERCLAIM

43. Plaintiff incorporates by reference its answers to Paragraphs 1 through 42 of Defendants' Counterclaim.

44. Plaintiff admits that the Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

45. Plaintiff denies the allegation in Paragraph 45 of Defendants' Counterclaim inasmuch as it is Defendants, not Plaintiff, who have engaged, and who are engaged, in unfair competition prohibited by California Business and Professional Code § 172000.

-11-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

46. WHEREFORE, Plaintiff reiterates its demand for judgment against Defendants as set forth in Plaintiff's Complaint.

### ANSWER TO THIRD COUNTERCLAIM

47. Plaintiff incorporates by reference its answers to Paragraphs 1 through 46 of Defendants' Counterclaim.

48. Plaintiff admits that the Court has original jurisdiction over this pendent claim pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

49. Plaintiff denies the allegation in Paragraph 49 of Defendants' Counterclaim inasmuch as it is Defendants, and not Plaintiff, who have engaged, and are engaged in unfair competition prohibited by the common law of California.

50. WHEREFORE, Plaintiff reiterates its demand for judgment against Defendants as set forth in Plaintiff's Complaint.

### AFFIRMATIVE DEFENSES

1. Assuming that Defendants intended to retain ownership of the "Caritas Creek" service mark when they relinquished ownership and control of the program to Plaintiff in 1983, Defendants thereafter acquiesced in Plaintiff's supervision and control of the program, became Plaintiff's at-will employees, allowed their California corporation to lapse for over twenty years and thereby abandoned their claim of ownership of the disputed service mark.

2. By going to the office of the California Secretary of State in February 2007 and reinstating a corporation that had gone out of existence twenty years earlier, then setting up that corporation as a putative owner of the "Caritas Creek" service mark and referring to the corporation in these proceedings as though the corporation had retained ownership of the

///
///
///
///
///

-12-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1

1  disputed service mark during that twenty-year period, Defendants have engaged in a sham and
2  are to that extent precluded from asserting ownership of the disputed service mark on the
3  grounds of unclean hands.

4  Dated: August 16, 2007.

SCHNADER HARRISON SEGAL & LEWIS LLP


By     /s/Matthew F. Miller
       MATTHEW F. MILLER
       BRUCE A. McDONALD, *pro hac vice*
Attorneys for Plaintiff and Counter-Defendant
CATHOLIC CHARITIES CYO

LAW OFFICES OF
SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
(415) 364-6700

-13-
PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIMS
*Catholic Charities CYO v. Mary W. Gordon, et al.*, Case No. C 07-02658 SI

SFDATA 627199_1